Case No. 15-1156, American Postal Workers Union, AFL-CIO Petitioner v. Postal Regulatory Commission. Mr. Anderson for the petitioner, Mr. Sandberg for the respondent. Mr. Anderson? Good morning. May it please the court, I'm Michael Anderson for the American Postal Workers Union, the petitioner herein. Congress charged the Postal Regulatory Commission with controlling the postal monopoly in two primary respects, rates and services. And the treatment is parallel in the 2006 amendments to the postal statute. Rates and services are both dictated by regulations that are promulgated for notice and comment and published in the Code of Federal Regulations. They are binding and enforceable and Congress specifically provided that violations of both rate and service regulations would be actionable by private complaint through section 3662. In this case, the union brought such a service complaint. It alleges that the widespread degree of noncompliance with service standards experienced in the United States between 2012 and the present has been proximately caused by management initiatives to dismantle the infrastructure of the postal service through what's called network consolidation or plant closings. That because the management of the postal service has closed plants that are proximate to communities like Brooklyn and Colorado Springs and Jacksonville, we are seeing the failure of the postal service in aggregate to meet the service standards required by regulation. The theory of the union is not simply that there is an aggregate national shortfall. It's that the particularly deep shortfalls in communities affected most by those plant consolidations explain the shortfalls nationwide. The Postal Regulatory Commission refused to hear this complaint. They dismissed it at the outset without allowing for discovery. The commission put out an order that gave two rationales. First, the commission said, and I'm quoting from the headline of this section of its order, published service standards represent service expectations. They are not requirements, nor can they be violated. Now, that would come as a rude surprise to Congress. Yes. And the goals are exactly that, goals. And it was Congress who said they lead to goals. It was not the agency that made that up. That's in the statute. That's in the uncodified part of the statute, correct. Does that make it less of a statute? Well, no. The standards inform the goals, but the goals can't be enforced through any kind of private complaint because they're not published in the Code of Federal Regulations. They're not put out for notice and comment, and no private party would be allowed to bring a judicial complaint that the commission hadn't adequately enforced performance goals. Who said that? This court has repeatedly said that where an agency has a performance plan that's not published in the CFR, that this is not final agency action that can give rise to judicial review under the APA. The agency here itself says the goals are subject to complaint, at least they correct me if I'm wrong. Again, I'm not sure. I still would have the question as to what is the redress if a goal is a goal, and they've reasonably responded to a failure to reach a goal. But in any event, I don't know how you can ride the standards horse when the statute contemplates, as far as you're riding it, when the statute contemplates the law that Congress enacted that standards merely lead to goals, and goals are what we're looking at to determine whether or not the commission and the service, whether they're measuring what's going on in a meaningful way. But let me take you back to section 3691. 3691 does not speak of performance goals. 3691A says first, service standards are subject to regulations, and subsection D says the regulations promulgated and any violations thereof shall be subject to review upon complaint. I absolutely understand. I know what your position is, but that doesn't get me anywhere, because if I keep reading the statute, I understand that standards lead to goals. Standards may also lead to goals. That are merely foundational for goals that are going to be enforceable and that we're going to review. So merely because you have a standard that is a regulation, as you keep arguing, that has a force of law doesn't tell me anything. It all depends on what it is. If it merely undergirds goals, I have to keep reading. But your honor, in 3653, Congress speaks of service standards as distinct from performance goals. I understand. In 3653B and C, it speaks of service standards and says if the commission finds noncompliance, it shall take action as if a complaint averring such noncompliance had been due in file. Now you and I can hypothesize, using my assumption, we could easily hypothesize situations where the agency promulgates a standard, and it's nonsensical in light of the statutory purposes. We're not going to do anything unless the sky is blue for 30 days. That's a standard. Well, you could bring a complaint and we'd say, yeah, you're right, that's inconsistent with law. But so what? But in the kind of case in which you're talking about, where they're doing it, there's no standard here that is facially, you're not saying there's any standard here that is facially impermissible. If that's the case, then the way I'm analyzing the case as a judge in looking at this, I have to know that standards lead to goals. And that's what the statute says. And the agency then has performance evaluations, and that's really what the process is about. Well, that's a policy argument against the way that Congress set up the statute. No, I'm relying on the statute. Oh, right. And the statute says service standards are regulations which are subject to complaint upon violation directly. You're missing the point. Go ahead. Let me see if I can just understand your position. Is it your position that the annual determination of compliance that the PRC issued here was pursuant to 3653D as opposed to 3653B? I think that annual determination covers all of those subsections. It covers both the service standards and the performance goals that are derived from it. The point is Congress in B and C speaks of the standards in contrast to the performance goals as something that can be enforced through a private complaint distinct from the annual compliance determination procedure. Why isn't the commission's sense of how that enforcement is to occur and to be triggered entirely sensible and consistent with the statute? Well, in general, because Congress said in 3653E that a compliance determination is only a rebuttable presumption. And what the commission has done here is to amend the statute to say it's irrebuttable. Once we issue an annual compliance determination, then there's nothing any private party can do. I don't understand that. That's nowhere in their decision. Well, what the commission is saying is if we've treated an issue in the annual compliance determination, it's like it's res judicata. They're not saying that at all. They're not saying that. They're saying it has to be something new. But in that case, on the facts of this case, what we would say is when the commission recites the bottom line aggregate national totals, it's not looking at any of the disaggregated features that show why there is substantially deeper noncompliance in communities that are affected by the plant closings. The commission is simply looking at the overall aggregate saying, oh, there's 12% noncompliance. That's not very good. We urge the Postal Service to do better. But if they allowed us to look at the external first class mail data, which is all that the union is asking for here, we could run a statistical analysis that would show that the shortfalls nationwide mask a much deeper shortfall in communities affected by the plant closings. But this seems to be a complaint about the commission's choice of remedy. That is not an argument you made in your opening brief. Well, as long as the commission is allowed to say that service standards are only expectations and they cannot be violated, then it follows, and Judge Edwards, I'd respond back to your question on this, it follows that if the Postal Service continues to fail to comply with performance goals, there's no remedy for the commission in court. There's no way for the commission to come to a district court or to this court and ask for a coercive order. Because all the commission would be complaining about would be the Postal Service's failure to meet an operational target. And I've listed the cases, beginning with Center for Auto Safety, decided by this court, that say that there is no final agency action that's reviewable under the APA when all the complainant is pointing to is a failure to meet an agency goal. It has to be a regulation in the Code of Federal Regulations. But the commission, I think, says something a little differently. They say that the Postal Service is required to promulgate service standards, and then our job is to see, and they're also required to set goals, and the commission can have input on those goals, right? Then once those performance goals are set, the commission says, well, then we will measure their service standards versus the goals. I mean, you can have a standard that says that first-class mail is supposed to arrive wherever in the country within four or five days after it's placed in the mailbox. Does that mean that anyone has a complaint if they mail one letter to their grandmother and it takes ten days, and they can bring a complaint based on the fact that that one service standard was violated in that one time? Yes, the commission has regulations that speak to that, 3031.11-12 in 39 CFR, where they say if the single grandmother wants to file a complaint, they can, and there's a procedure where the commission evaluates whether the volume of complaints rises to the point that they would support a complaint under 3662. But that's not what you've relied on, right? You've relied on 3662, not 30 CFR. No, the CFR gives the commission an ability basically to operate a small claims court for those individual grandparents. No one suggests that this complaint is de minimis. This complaint is nationwide and systemic. And I think the answer to this conflation of goals and standards is in 3691D. The question is, what, if anything, could any private entity ever rely on to bring a justiciable private complaint about a violation of service? And the answer is found in 3691D that says the regulations promulgated to this section and any violations thereof shall be subject to review upon complaint. Being subject to review doesn't, go ahead, I interrupted you. Right, but the performance goals that the commission is talking about and that you're talking about are not regulations. They're not what Congress had in mind as what's being violated. But Congress, you've referred to goals in the statute. Congress says that goals are informed by standards, but it says directly in 3691D that it's the violation of the regulations, of those service standards that lead to a private complaint. No, they say you can file a complaint with respect to a standard, but you still have to figure out what the standard is about. And the statute said the standard is about creating goals. You can't stop by reference to D. Yes, there is review, and I've given you an example of regulations, of standards, that could be preposterous. And you could file a challenge and say that's not what Congress had in mind. You can't adopt that as a standard to inform your goals because it has absolutely nothing to do with what Congress allowed you to do. But if you're within the ballpark of what Congress allowed you to do, then the question is, well, what's the goal? That's the way Congress set it up. Well, at the end of the day, when the court decides this case, it will have to decide whether there is any scenario where a private complainant would be able to appeal from the commission on the violation of service standards, a violation of the regulations described in 3691D. And what the commission is giving you here is an explanation of what those standards are, which would make that enforcement impossible permanently. And that would read service regulation out of the statute entirely. What does 3653C mean? That says that if the Postal Regulatory Commission makes a finding of noncompliance, then it shall take appropriate action in accordance with subsection C and E of 3662 as if a complaint averring such noncompliance had been duly filed and found under such section to be justified. So it seems to say that the remedy with respect to under 3653C is really the same or the same types of remedies would be if a private complaint was made, right? Right. But as the Senate Commissioner Goldway points out, if you go down to 3653E, it says that any one of those determinations only creates a rebuttable presumption. And Commissioner Goldway cites a prior commission order when it disseminated its complaint procedure that explained that the annual complaint determination was not meant to foreclose the more in-depth kind of contested evidentiary litigation and discovery that might occur during a complaint. So the fact that there is an annual complaint determination doesn't foreclose a complaint that's alleging a much more precise theory. Well, I wasn't talking about foreclosing a complaint. It just says that the action that the commission could take was basically the same type of action, remedial action, as if a complaint was made, right? Correct. So Congress intended basically for the same types of remedies to be ordered by the commission, whether it's a private complaint made or whether they make their annual determination of noncompliance. Right. But that is why the complaint or the quasi-complaint of the annual compliance determination would have to do with the violation of the service standards of the regulations themselves and not of derivative performance goals. But I guess my point, sir, is that the statute, Congress says, that the remedy that the regulatory commission will issue if there's an annual determination of noncompliance is basically the same remedy that would come about if a private party made a complaint. Correct. And the grounds for which they dismissed your complaint is saying that, look, even if we were to sustain your complaint, the same remedy that, you know, you would want, we've already issued, so there's no point to it. No, but we're saying on the facts... Isn't that what they ruled? Well, on the facts of this case, the commission... Is that what they ruled? That is what they ruled. Is that consistent with 3653C? Because they're not allowing the union to... Is it consistent with 3653C? They issued an order under 3653C. They erred in dismissing the complaint under 3653E because they didn't allow the union to... Was their ruling consistent with 3653C? Yeah, that is what they issued, though. That is what the issue of complaint determination... It's not part of your complaint, choice of remedy. We don't reach that at this point. The complaint was dismissed on its face, so this court doesn't sit to review what remedies could have been given if the union proved its case. Recalling on your claim that the error of the commission relates to failing to choose the remedy that you want as opposed to the remedy that seemed suitable on the basis of the facts... They refused to allow the union to prove its case at all. They refused to allow the union access... No, no, no. On the second response, you really do have to hear us if you want to respond to us because it really does leap out. On their second response, they said to the... And this is what Judge Wilkins just followed up on. Judge Williams started with it. They said, okay, let's assume you're right. We've addressed it. We've already addressed it. It's essentially saying it's moot. You did not respond nor say to us there's a choice of remedy here and we have... They failed in their selection of remedy and you haven't raised that issue. It's not a question of remedy. It's a question of the theory of causation. It is because you want them to get into many more things you claim than they did. You want them to look at local situations, et cetera, and you're saying the remedy they chose was not responsive to the concerns that you are trying to raise. That's not raised before us. Well, but as long as they take the position that service standards aren't really enforceable, then their expressions of concern to the postal service wouldn't be enforceable in court. They say they're enforceable through the goals. They've put themselves on record as taking that position. They're enforceable through the goals. You're essentially arguing... Your argument would be, if you had played it all the way out, is that you have these goals, you recognize they haven't been met, and the remedy that you've provided is not an adequate remedy. There's a better choice of remedy. It's not the way you've played this case out. And they're conceding that. They're not saying you're barred from raising anything. That's not their position. Okay. Thank you, Your Honor. I would just close by saying that the union would not be able to enforce any justiciable complaint over performance goals if the commission's theory as presently presented is left in place. That's our fundamental position. Thank you. All right. Thank you. Mr. Sandberg. Good morning. May it please the Court. Jeff Sandberg for the Postal Regulatory Commission. I think Your Honor's colloquy with my opposing colleague has most of the pieces of the puzzle. There's just one piece of the puzzle that I want to add in, which is the marching orders that Congress has or hasn't given to the commission as to how the service standards are to be enforced. Under 3653B, Congress has instructed the commission to conduct an annual compliance determination in which the commission must find, quote, whether any service standards in effect during such year were not met. Congress didn't specify, however, how to determine whether the service standards have been met or not. Congress didn't say if a single piece of mail is late, then the service standards are automatically violated. But Congress also didn't set a threshold. So the commission, through the process of adjudication that is annually compelled, has had to fill that gap in the statute. And what the commission has chosen to do, quite reasonably, is to borrow from the performance goals that Congress elsewhere in the statute has required the Postal Service to promulgate. And it's not the case that the commission is automatically stuck with these goals, but the commission has found the goals set by the Postal Service, which are 95%, 96% on-time delivery for the product at issue here. The commission has found those goals to be reasonable and has borrowed them as the standard in the adjudication that it conducts annually. And the commission undertakes the same legal analysis for private complaints under 3662 as it does under 3653, because, as Judge Wilkins' question pointed out, the remedies are the same under both statutes. Can a private party participate in that proceeding or contest the results of those proceedings? Yes, private parties may participate in the annual compliance determination. The commission's adversary in this proceeding has participated in some but not all of those ACDs. And as indicated in our brief, we believe that a party who feels themselves to be aggrieved by the annual compliance determination and the choice of remedies therein may attempt to seek review of that in this court. Under what authority? Under 39 U.S.C. 3663, which provides that a person adversely affected or aggrieved by a final order or decision of the commission may seek review in this court. C, you said? Subsection C? It's 39 U.S.C. 3663, which is a provision that provides judicial review in this court. That's the provision that we are here under right now. But a party can seek review of an ACD, as I believe the Postal Service has in the past. And the union did not do so here. It did not contest, although it participated in the annual compliance determination for fiscal year 2014, which was the most recent determination that was on the books at the time that the decision was issued here. So let me just play it all the way out, make sure I understand. You're saying that the results of the compliance review, the final agency action subject to judicial review, you're not objecting to that? We're not contesting that, Your Honor. There's no doubt. Is there any time limit that you point to, or what? It's the time limit in 3663, which is within 30 days after such an order or decision becomes final. So the ACD is usually issued in March of each year. Is it pursuant to an order, or what? What is it? Is it pursuant to an order? What is issued? The annual compliance determination report is a report, but we understand that to be a final order or decision. And so to just think about what they're contending and what you're saying, at the conclusion of that they could have said, No, no, no, you're not taking into account the local situations that we're really concerned about when you've closed operations and your assessment of the performance goals here makes no sense, et cetera, et cetera. They could do that? That's true. They could also bring a private complaint if they have something new to bring to the attention of the commission. But the claim that was advanced here, and I think if you actually read the amended complaint, look at page 93 of the appendix, it's inconsistent with what my opposing colleague is now saying. The claim that they presented to the commission was that the Postal Service was violating its service standards on, quote, a nationwide or substantially nationwide basis. There's no assertion of disproportionate harm to particular communities. There's no suggestion in the complaint of particularly deep shortfalls. Those assertions have only been made for the first time in this court. The commission's decision, in fact, says we don't need to look at district-level data in order to resolve this complaint because the allegation in this complaint is of a nationwide problem, and that's precisely the same inquiry that we just undertook in the ACD. So had the union presented a complaint that advanced a different type of violation than the commission had already considered, then the commission would have had to consider that. I'm not sure I understand your position. So if the commission finds that there's been noncompliance and the union or anyone else files a petition or a complaint under 3662 and says, yes, we agree that there's noncompliance, but it needs remedy that's more than a tongue-lashing by the commission, it would appear that from the commission's order that they would take the position that that complaint should be dismissed because it doesn't really add anything new. Well, the commission takes these complaints on a complaint-by-complaint basis. It's a process of adjudication. And what the commission said here was the allegations that this complainant has advanced in this complaint would not lead it to revisit any of its existing remedial determinations. That's not to say that another complaint might not encourage the commission. This is basically enough. Well, let me just make sure I understand your position. Let's suppose the Postal Service had only met 50% of its service standards, well, well below the 95, 96% goals. And all the commission said was, you know, try harder. And a private party says, you've got to do more than say try harder. You need to give them some specific direction. And here are 10 different things that we think that you could tell them to do rather than just say try harder. Could the commission just say, you know, we're dismissing that because you're not alleging anything new. You're agreeing with us that they're out of compliance. We've set the remedy, and that's that. I'm not prepared to say what the commission would do under that circumstance because I'm asking you what they could do. Could they say that? I think that if they looked at the allegations in the complaint as to the nature of the service standards being violated and the commission said, okay, we know about this problem already and we've imposed the remedy that we want to impose for it, the commission could dismiss that complaint and then the complainant could seek review in this court. And then the question would be whether the fashioning of remedies and sanctions by the commission was so unreasonable as to be subject to vacater in this court. And, of course, a commission's choice, any agency's choice of what remedy to fashion is subject to the most deferential possible review in this court, as made clear in the NTEU decision and, indeed, in one of the most recent post-regulatory commission decisions. It's consistent with Judge Wilkins. What I'm trying to understand is part of your response here because, in this case, go away because we already had compliance review, you didn't challenge the results of it, and we don't have to do it again now. Is that your answer here? That's one question. Is that what you're saying? I think our position here is that the annual compliance determination is not irrelevant. The union's position is the commission has to blind itself to the findings it's already made and dedicate more of its scarce resources. Wait, is that a timeliness disposition? A mootness disposition? We've already done it and you didn't challenge it disposition? It's a merits determination. I think it's a prudential matter of the agency choosing where it's going to dedicate its regulatory resources. A complaint of this type is an invocation of the regulatory oversight of the commission to do a better job of regulating the Postal Service, and the commission invites complaints that bring new matters to its attention. But if the commission says you're not bringing new matters to our attention, it's perfectly reasonable for the commission to say. Because we just did it in the compliance review. Because we just did it in the compliance determination. Now, the second question I have, I want to make sure I understand what you're saying. You're not doubting that even though a compliance review has been had and you've issued your order or disposition and nothing follows it, that a party, including the union, can come in at any time with a complaint and say, you know, we've looked around and there are local problems here and we know you did a compliance review, but you really need to deal with this in order to make some sense of your goals. You're not doing what Congress had in mind when we talked about standards and goals. They can bring that complaint at any time. Yeah, a party can bring a complaint at any time. It's not as if, as the dissenting commissioner said, that complaints become moot after an annual compliance determination. The question really is, do you bring something new to the table that warrants the commission to dedicate its scarce resources to a proceeding on your complaint? And here, the complaint was not of that type. The complaint was, we think that there's a nationwide violation of the service standards. And the commission said, yeah, we know about that. We know that network rationalization is happening. We know that there have been some shortfalls for certain products, and we think the Postal Service needs to do better. And I suppose you would concede that they had raised the point that you say they had not raised, that is, there are local problems, not just the nationwide problem. Suppose that was here. Would they have stated a viable claim that the commission would be required to address? It would be a different inquiry. I don't want to prejudge what the commission's determination would be. I haven't had the thought about that, because you can't do that. Part of your argument is they didn't raise the local claims. Now, I can read that to say, I can accept that to say, if they had raised it, then you'd have to consider it. Is that right or wrong? I don't know that the commission would have to consider it, but I don't think this Court needs to decide what the scope of the commission's discretion is here. Let's assume that the factual predicate for the claims about local failures is compelling. You don't have trouble answering that, do you? I'm wondering why you're hesitant. Well, I don't think the commission would be foreclosed from that, and perhaps the commission chose to do that. I'm just not prepared to bind the commission to any particular outcome of a particular adjudication. Nobody thinks you can bind the commission. You're being asked about how the system works. The way the system works. Judge Edwards and I are very puzzled at your resistance to what seems to be an obvious hypothetical. I think it's responsive to say that if there's something new that's brought to the commission's attention, that the commission finds compelling, it can proceed. Wait. Indulge us, please. Our minds are not as facile and quick as yours, so hang with us. It is brand new from anything that went on in the compliance proceeding. You said they can bring a complaint any time. They're saying there are local problems here. They document them. They're real. No one could doubt they're real. What you do with them is a different question. There's no doubt they're a real problem. The sort you say they didn't raise here. Wait a minute. The commission says, we're not going to look at it because we don't feel like it. They file a suit for review, which you say they could do. We would overturn it, I assume, for lack of reason decision-making, right? I know you can't bind the commission. One reason why I'm hesitant, Your Honor, is because the question of what geographic levels the service standards apply at is an unresolved question for the commission. And that's a question of law that I don't want to opine on yet. But I will grant you, if the commission were to find that it's a violation of the service standards for service to be disproportionately acute in particular communities, it may well then commence proceedings on that complaint and entertain it. Well, it might be an abuse of discretion if they wouldn't even entertain that question. That is to think about it and say something to the complaining party, right? Perhaps. We're just trying to understand what you're saying. You speak with great assertion and verb until you get to the question you knew was coming, and then you say, well, I can't speak about that. Well, I think all the court needs to resolve here is whether this decision was reasonable and reasonably explained. No, no, no. We have to understand how you think the process works and how they think it works, and that will inform anything that we write. Trust me. Well, the commission will – the statutory language is material issue of factor law, which the commission understands to mean are you bringing something new to our attention that's going to affect our regulatory decision-making? And it's committed by Congress to the commission's expertise as an initial matter to decide what do we want to – what regulatory choices should we make vis-à-vis the Postal Service. And that's a case-by-case determination. And I agree with you that it would make much more sense for the commission to commence proceedings on a complaint in which something new is brought to the commission's attention versus here where nothing new is brought to the commission's attention. And I think that that should suffice for purposes of this case. I would be very happy to answer any further questions the court may have. And if not, we ask that the petition for review be denied. Thank you. Mr. Anderson, you are out of time, but I'll give you two minutes for rebuttal. Thank you for the time, Your Honor. The union's complaint does pick out nine communities that are specifically documented, Jacksonville, Colorado Springs, Altoona, Brooklyn, and so forth. It identifies them in particular and says that they've been affected by the service failures that attended to the plant relocation. That is what's before the Postal Regulatory Commission. We say that this is illustrative of an endemic national problem, but it certainly is made out with proof as to the local communities. Finally, there's this issue about whether the Postal Regulatory Commission can base its judgments in the annual compliance determination and in rejecting this complaint on a nationwide database that it refuses to share with the public. It would be one thing if all parties, including the union, had access to this database and could run statistical tests on that performance data in order to make a case to the commission. But here you have a situation where the agency is ruling in an annual compliance determination on a matter that Congress intends to be subject to public notice and comment as well as complaint, where only the agency is privy to the data. And if the union and the public had access to the data, then there would be more transparency in the process. But this court has said many times, including in American Radio League, cited in our case, that an agency shall not be allowed to base decision-making on a matter that is meant to be open to public notice and comment as well as complaint based on information that is known only to the agency. There's no such thing as a secret database that justifies the agency's determinations. That the union can't find out about. And the answer to the question about whether the union could have brought a petition for review of the annual compliance determination, it could have under 3662C. That's true. But absent access to that database to prove the union's case, the union would have been powerless to refute the self-serving, you know, agreement. But the one problem, just so you understand what we can and cannot do, that may or may not be an accurate assertion. And there's plenty of administrative law in which you could ground a complaint, but you didn't raise that. The challenge to the compliance review and say, we want to be able to challenge you, they will not give that. There's plenty of administrative law that says or suggests that if an agency acts on data, they will not share with those who are affected. That's not the case before us. But that's why we ask for the data in this complaint. There is a provision. You were talking about the compliance review, but they've agreed. You can challenge a compliance review, and if you think absence of data is a question, that's the way to deal with it. Right, but the annual compliance review, Congress says, does not create an irrebuttable presumption against our complaint. On a petition for review of an annual compliance proceeding, we do not have access to the procedure for discovery of that data that we do in a complaint procedure, and that's why we pursued this avenue. Thank you for your time, Your Honor. Thank you. We'll take the case under advisement.
judges: Wilkins, Edwards, Williams